UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at ASHLAND

CIVIL ACTION NO. 07-CV-19-HRW

RICKY L. BARNARD                                                          PLAINTIFF

VS:                    **MEMORANDUM OPINION AND ORDER**

GARY BECKSTROM, ET AL.                                          DEFENDANTS

Currently before the Court for consideration are the following pleadings:

(1)    The "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" [Record No. 64], filed by counsel for Defendants Gary Beckstrom, Joseph Meko and Thomas Buckler;

(2)    The "Motion for Summary Judgment"[Record No. 80] filed by counsel for Defendants Prison Health Services, Inc. ("PHS"); Denise Black, and Jennifer Gilliam.

(3)    The "Motion to Amend/Correct Record No. 125 Re: Exhibit 27" [Record No. 126] filed by Ricky L. Barnard, the *pro se* plaintiff;[1]

(4)    The "Motion to Strike Plaintiff's Submissions" [Record No. 127] filed by Defendants PHS, Denise Black, and Jennifer Gilliam.

PROCEDURAL HISTORY
1. The Complaint

In January of 2007 Barnard filed a civil rights action against the defendants in the state courts of Kentucky, the Elliot Circuit Court.  Barnard complained about numerous conditions

---

[1]

Plaintiff's submissions, filed as Record Nos. 74 [April 4, 2008] and 81 [May 13, 2008], are identical to each other.

of his confinement at the Little Sandy Correctional Complex ("LSCC"), including but not limited to his medical treatment at the prison.

The plaintiff named six defendants: (1) Gary Beckstrom, former Warden of the LSCC; (2) PHS; (3) Denise Black, nurse at the LSCC; (4) Thomas Buckler, Lieutenant at the LSCC; (5) Jennifer Gilliam, nurse at the LSCC; and (6) Joseph Meko, current warden of the LSCC. PHS is a private health care provider which provided services to inmates located at LSCC. Nurse Black is the Health Services Administrator ("HSA") for LSCC. Nurse Gilliam is a licensed practical nurse. Black and Gilliam were at all relevant times, employed by PHS. The defendants removed the action to this court on February 23, 2007 [*See* Record No. 1].[2]

Barnard alleges that the Defendants PHS, Inc., Denise Black and Jennifer Gilliam violated his Eighth Amendment right to be free from cruel and unusual punishment. He claims that PHS and Black were deliberately indifferent to his medical condition and failed to provide proper medical treatment or accommodations to treat his psychiatric medical needs.

Barnard alleges that the Defendants Gilliam, Buckler and Beckstrom violated his right to due process of law guaranteed by the Fourteenth Amendment of the United States Constitution. Specifically, Barnard alleges that Gilliam made a false report about him, which prompted the disciplinary action taken against him.

Barnard was originally charged with "Inappropriate Sexual Behavior." He was afforded a disciplinary hearing on January 12, 2006. Defendant Buckler, who presided over the

---

[2]

Due to the length and confusing allegations in Barnard's initial complaint, on May 29, 2007, this Court entered an Order directing Barnard to submit a more concise Amended Complaint [See Order, Record No. 16]. Barnard filed his amended complaint on June 18, 2007 [Record No. 19].

disciplinary hearing, found Barnard guilty of a lesser offense, "Attempting to Develop a Relationship with a Non-Inmate." Buckler sentenced Barnard to confinement in disciplinary segregation for forty-five days, with credit for time served.

Barnard claims that Buckler unfairly convicted him because he (Buckler) used a partially pre-printed form on which he wrote specific Findings and Conclusions as to Barnard's guilt. Even though part of the form required Buckler to provide handwritten information specific to the charges against Barnard, the form also contained some standard pre-printed language. Barnard contends that Buckler's use of the form containing some printed language constituted evidence of a predisposition toward finding him guilty.

Because Warden Beckstrom upheld Buckler's ruling, Barnard asserts a Fourteenth Amendment due process claim against Beckstrom under the theory of *respondeat superior*. Barnard seeks substantial damages from Defendants Gary Beckstrom and Thomas Buckler.[3] He seeks unspecified compensatory and punitive damages from Defendants Gilliam, Black and PHS.

Barnard claims that all of the named defendants breached their duties as public servants under KRS 522.020 or KRS 522.030, both of which are contained in the Kentucky Penal Code. In pertinent part, KRS 522.020 states that:

> A public servant is guilty of official misconduct in the first degree when, with intent to obtain or confer a benefit or to injure another person or to deprive another person of a benefit, he knowingly: (a) Commits an act relating to his office which constitutes an unauthorized exercise of his official functions; or (b) Refrains from performing a duty imposed upon him by law or clearly inherent in the nature of his office; or (c) Violates any statute or lawfully adopted rule or regulation relating to his office.

---

[3]

Barnard is pursuing only unspecified injunctive relief against Defendant Joseph Meko.

KRS 522.020. (emphasis added). Similarly, KRS 522.030 makes it a crime for a public servant who knowingly,

> (a) Commits an act relating to his office which constitutes an unauthorized exercise of his official functions; or (b) Refrains from performing a duty imposed upon him by law or clearly inherent in the nature of his office; or (c) Violates any statute or lawfully adopted rule or regulation relating to his office.

KRS 522.030. (emphasis added).

## 2. Motion for Summary Judgment filed by Defendants Buckler and Beckstrom [Record No. 64]

Defendants Buckler and Beckstrom assert various reasons why summary judgment should be granted in their favor. First, the defendants argue that Barnard's 45-day confinement in administrative segregation did not implicate a liberty interest which would have triggered the specific due process requirements established in *Wolff v. McDonnell*, 418 U.S. 539, 94 S. Ct. 2963 (1974).[4]  Second, they assert that the disciplinary process afforded to Barnard complied with the due process requirements set forth in *Wolff*.

Third, they argue that there was more than "some" evidence on which to premise the finding of guilt, under broad the proof requirements set forth in *Superintendent v. Hill*, 472 U.S.

---

[4]

The defendants note that under *Wolff*, an inmate facing a disciplinary hearing is entitled to: (1) advance (no less than 24 hours) written notice of the claimed violation; (2) a qualified right to call witnesses and present documentary evidence in his defense when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals; and (3) a written statement of the fact-finders as to the evidence relied upon and the reasons for the disciplinary action taken. *Wolff*, 418 U.S. at 563-67, and *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 105 S. Ct. 2768 (1985).  The defendants argue that each of these steps was followed with respect to the disciplinary charges filed against the plaintiff.

445, 454-46 (1985). Fourth, they contend that the 45 day period of confinement in segregation was not a atypical or significant condition of confinement as defined by cases such as *Hewitt v. Helms*, 459 U.S. 460 (1983) and *Mahoney v. Carter*, 938 S.W.2d 575 (1997). Fifth, they argue that the confinement was necessary to ensure security and compliance with prison regulations.

Sixth, Buckler and Beckstrom contend that they are entitled to qualified immunity because the disciplinary action taken against Barnard did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

### 3. Barnard's Response [Record No. 119]

Barnard alleges in his "Response" that Gilliam violated the Eighth Amendment by falsely claiming that he had made inappropriate sexual comments to her. He alleges that she did so only to subject him to disciplinary action and cause him physical harm (increased blood pressure) and emotional distress. Barnard further alleges that Hearing Officer Buckler demonstrated bias against him in favor of Nurse Gilliam as evidenced by his finding Barnard guilty .

He alleges that both hearing officer Buckler and Warden Beckstrom had their minds made-up to rule against him and did so by completing the partially preprinted form containing Buckler's findings and the sanction imposed against him. Barnard states that he never, at any time, admitted to any prison official that he made a sexual comment to Defendant Gilliam. He further alleges that the defendants have falsified and materially altered the original disciplinary charge filed against him, by a Jeff Dennis the investigating officer, on Gilliam's behalf. Barnard claims that the documents have been altered to read that he made the inappropriate sexual remark

5

to Nurse Gilliam at 9:15 p.m. on January 1, 2006 instead of 9:15 a.m. on that date.

Barnard reiterates his original claim that as public servants who hold office, these defendants are civilly liable under KRS 522.020 and/or KRS 522.030.

### 4. Motion for Summary Judgment Filed by Defendants Gilliam, Black and PHS [Record No. 80]

Defendants Black, PHS and Gilliam assert seven reasons why they believe summary judgment should be entered in their favor.  The court will summarize these claims.

### A. No Right of Action for Criminal Violations

First, the defendants contend that Barnard erroneously relies on two Kentucky criminal statutes (KRS 522.020 nor KRS 522.030) as authority for the assertion that these statutes subject them to civil liability.  They argue that neither KRS 522.020 nor KRS 522.030 afford Barnard a right of action for damages in this § 1983 proceeding.  They contend that neither PHS nor its employees, Black and Gilliam, are "public servants," who hold an "office" as intended by the constitution or the legislature, citing *Commonwealth v. Howard*, Ky., 379 S.W.2d 475, 476 - 477 (1964).  They argue that PHS is a private corporation which was hired to provide certain professional medical services to inmates at LSCC, and that during all relevant times, Black and Gilliam were employees of PHS.

The defendants further contend that these two statutes do not give rise to a private civil cause of action.  Citing a May 3, 2005 decision rendered by Judge William O. Bertelsman, *Young v. Herald*, Covington Civil Action No. 04-245-WOB, the defendants argue that criminal penalties cannot be imposed through the mechanism of a civil rights action.

### B. Statue of Limitations

6

Second, the defendants argue that Barnard's Eighth Amendment claim of deliberate indifference against them is barred by the applicable statute of limitations.  They note that the statue of limitations in a claim arising under 42 U.S.C. §1983 in Kentucky is one year. *Collard v. Kentucky Bd. of Nursing*, 896 F.2d 179, 182 (6th Cir.1990).

According to these defendants, the injuries for which Barnard seeks redress as to PHS were either known to or readily discoverable at or about the time that he claims PHS allegedly refused him treatment.   PHS argues that because Barnard alleges that PHS denied him medical treatment between July 21, 2005 through October 28, 2005 [Record No. 19, ¶ 55), he was required to have filed his Complaint no later than October 28, 2006.  PHS argues that because Barnard did not file the present action until January 3, 2007 – well over a year after his alleged cause of action accrued – the claims against it are time barred and must be dismissed.

Defendant Black denies that she refused care to Barnard, but  she argues that the injuries for which Barnard seeks redress as to her were either known to or readily discoverable at or about the time of the alleged refusal. She notes that Barnard alleges that she denied him medical care from November 3, 2005 until February 16, 2006 [Record No. 19, ¶ 52].  She argues that because Barnard did not file the present action until January 3, 2007, all claims against her arising prior to January 3, 2006 are time barred and must be dismissed.

## C. Failure to Properly Exhaust Claims

Third, the defendants claim Barnard failed to administratively exhaust the claims which he asserts in his Complaint. They cite the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. 1997e(a), which requires inmates who bring civil rights complaints to exhaust all

available administrative remedies before filing an action.[5]

The defendants argue that Barnard failed to comply with the Kentucky Department of Corrections' ("KDOC") Policy and Procedure ("CPP")14.6 § II (K)(1 )(a)(4). Pursuant to CPP 14.6 §II(K)(1)(a)(4), "the grievant shall include all aspects of the issue in the written grievance that the grievant wants to be addressed by the grievance process so that they can be dealt with during step 1."

The defendants argue that although Barnard filed Grievance No. 05-214 on or about November 1, 2005, that grievance did not provide fair notice to LSCC officials that Barnard believed that either Defendants  PHS or Defendant Black had denied him access to psychiatric medical care on or before November 1, 2005. They claim that while the plaintiff asked a series of questions in that particular grievance, he did not request an appointment or any other specific action relating to psychiatric care.

They further note that in that grievance, Barnard did not allege the existence of any physical injury. They contend that Barnard's failure to mention the exact type of relief he wanted when he filed his grievance renders his exhaustion effort deficient as to any claims arising on or before November 1, 2005.

As for claims alleged to have accrued between November 2, 2005 and February 16, 2006,

---

[5]

Title 42 U.S.C. 1997e(a) states as follows:

No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

the defendants counter with the assertion that Barnard did not file **any** additional grievances after he filed Grievance 05-214 on November 1, 2005. To the extent that Barnard asserts claims of denied medical care at the hands of Defendant Black between November 3, 2005 and February 16, 2006, the defendants emphasize that the record lacks any evidence of any grievances. Consequently, the defendants argue that any claims against Black arising after November 3, 2005, must be dismissed as a matter of law.

Next, the defendants argue that Barnard failed to exhaust his administrative remedies regarding his claims against Defendant Gilliam.  They contend that by not filing any grievance about Gilliam, Barnard failed to exhaust his administrative remedies as to claims against her.

### D. Lack of Personal Involvement by Defendant Black

The defendants next argue that Defendant Black's only involvement in this matter was responding to Barnard's grievance at the informal resolution stage. They argue that because Black's involvement was limited to responding to a grievance and meeting with him one time after she responded to the grievance, she cannot be subjected to § 1983 liability.

They cite the case of *Shehee v. Luttrell*, 199 F.3d 295, 300 (1999), which holds that officials whose only action involve[s] the denial of administrative grievances or the failure to act are not liable under §1983. The defendants contend that the entire basis for Barnard's claim against Black arises from her involvement in the grievance process.  They contend that with the exception of her review of the grievance on November 3, 2005 and the meeting on November 10, 2005 (in which she sought to resolve his grievance), Barnard alleges no further conduct on the part of Black, whatsoever.

E. PHS and Black Were Not Deliberately
Indifferent to Barnard's Serious Medical Needs

These defendants next argue that their conduct did not amount to deliberate indifference to a serious medical need as defined by the applicable Eighth Amendment case law.  First, they contend that Barnard did not suffer from a "serious" medical condition, which is one of two requirements in order to assert an Eighth Amendment claim. They contend that the only medical issue which Barnard raised on November 1, 2005, concerned a change in the dosage and times for administering his Elavil medication.  Defendant Black and Dr. Renate Stingl both filed affidavits stating that the LSCC medical staff responded to Barnard's requests and altered his medication according to his demands [*See* Record Nos. 80-5 and 80-6].

Second, the defendants argue that even assuming that the plaintiff suffered from a "serious" medical condition, Defendant Black did not act with a culpable state of mind, which is required in order to assert an Eighth Amendment claim.  They argue that Barnard's chart does not contain a single written request or note identifying any mental health complaints. Based on the absence of such a request or grievance, they contend that PHS employees, including Black, did not have knowledge of Barnard's alleged desire to see a psychiatrist.[6]

Finally, the defendants argue that at the most, Barnard has alleged either a difference of opinion as to the course and adequacy of treatment, or mere negligent diagnosis. Citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976), and other cases, they contend that under either scenario,

---

[6]

The defendants further reiterate their prior assertion that Barnard also failed to submit a written request to see a psychologist or a psychiatrist between November 1, 2005 and February 16, 2006.

Barnard has not stated a valid claim under § 1983.

### F. Failure to Establish Causation

The defendants contend that the majority of Barnard's complaint consists of conclusory allegations or facts that do not involve either Defendants PHS or Black. They argue that Barnard has failed to state any facts which suggest that PHS or Black actively engaged in some conduct designed to intentionally deny him care. They again remind the Court that the record is devoid of any evidence suggesting any involvement by Black in the plaintiff's medical care after the meeting with him on November 10, 2005. The defendants reiterate that the record is full of evidence that Barnard was regularly receiving treatment.

### G. Plaintiff's Medical Claims are *De Minimis*

Finally, Defendants Black, PHS, and Gilliam cite the PLRA, 42 U.S.C. § 1997e(e) and two cases which hold a prisoner who asserts a claim for mental or emotional injury suffered while in custody must show that he suffered a physical injury. The defendants argue that Barnard has not shown the existence of a physical injury as a result of the alleged delay in, or denial of, medical treatment.

The defendants contend that if it could be assumed Barnard had demonstrates a physical injury from any delay in or denial of medical treatment, it was at best a *de mininis* injury, not a serious physical injury. The defendants cite numerous cases which hold that complaints of headaches, insomnia, stress, and stomach anxiety do not constitute physical injuries sufficient to overcome the PLRA's requirement that a physical injury be shown.

5. Plaintiff's Response [Record No. 119]

In his Response, Barnard disputes the defendants' claim that his November 2, 2005 Grievance did not contain all aspects of his complaint that the LSCC failed to provide him with adequate psychiatric care.  Barnard alleges that Grievance No. 05-214 did in fact put the prison on notice of his allegations regarding the need for, and alleged denial of, psychiatric care.

Barnard claims that PHS violated the terms of its contract with the KDOC by failing to have a physciatrist available at the prison 8 hours per week [Record No. 119, p.19].  He reiterates his claim that he was denied proper and necessary psychiatric medical treatment and that the denial of that treatment caused him to suffer more emotional distress and anxiety.

As to the statute of limitations defense, Barnard alleges that his failure to meet the October 28, 2006, statute of limitations' deadline was the fault of the defendants [*Id.*, p. 21].  He claims that Defendant Black failed to respond to his request for psychiatric care on July 21, 2005 during the initial intake examination [*Id.*, pp. 26-27].  He claims that Black refused to answer various questions which he had posed on November 1, 2005, the date on which he submitted Grievance No. 05-214 [*Id.*, p. 21].

Barnard claims that he was unable to properly articulate or assert his legal claims until the discovery process in this litigation. Barnard claims that not until that time was he able to review the contract between PHS and the LSCC, which he says requires a physciatrist to be on duty at the prison 8 hours per week [*Id*, p. 22].

Barnard further claims that in his November 1, 2005 Grievance Form, he stated that he suffered from nerve damage stemming from the amputation of one toe and the missing parts of

two other toes [*Id.*, p. 29]. He stated that standing in the cold or on cold surfaces worsened the effects of his nerve damage [*Id.*]. He claims that this establishes a physical injury.

He further claims that on October 10, 2005, he requested mental health treatment at the LSCC. He continues to complain that his medication was renewed without a doctor, psychologist or a psychiatrist examining him. He states that on October 25, 2005, he filed a request for medical treatment. He states that on November 2, 2005 he filed Grievance No. 05-214 after he was "jerked around, lied to, and cussed out." [Record No. 28].   He contends that his medical needs were not properly addressed until he saw Dr. Arthur Daus on February 16, 2006 [*Id.*].

Barnard again reiterated that all of the named defendants are public servants as defined by KRS 522.010, KRS 522.020 or KRS 522.030. He again asserts that the defendants violated the terms of the statutes and that because of that alleged violation, they are liable to him for civil damages in this § 1983 action.

DISCUSSION

### 1. Standards for Summary Judgment Motion

Summary judgment should be granted if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c) (2007). The evidence, all facts, and any inferences that may be drawn from the facts must be viewed in the light most favorable to the non-movant. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Woythal v. Tex-Tenn Corp.*, 112 F.3d 243, 245 (6th Cir.), *cert. denied,* 522 U.S. 967 (1997).

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after

adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322 (1986).  The significant question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-53 (1986).

The moving party has the burden of showing there is an absence of evidence to support a claim.  *Celotex*, 477 U.S. at 324-25. If the non-moving party completely fails to prove an essential element of his or her case, then all other facts are rendered immaterial. *Id.* at 322-23.

A district court is required to examine a motion for summary judgment  to ensure that a moving party has discharged his burden.  *Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991). With these considerations in mind, the Court will address the parties' submissions.

2. Motion for Summary Judgment filed by
Defendants Buckler and Beckstrom [Record No. 64]

Barnard's Fourteenth Amendment due process claims stemming from the January 12, 2006 disciplinary hearing lacks substance and will be dismissed on the merits for various reasons. First, the KDOC "Disciplinary Report Form" [Record No. 80-11] reveals that Barnard suffered the loss of **no** good-time credits as part of his sanction.[7] His punishment consisted solely of being assigned to Disciplinary Segregation for 45 days, with credit for time served.

Such confinement, absent the loss of good time credits, does not establish either a valid

---

[7]

*See also* the KDOC's official "Disciplinary Violation"[Record No. 64-4].

14

due process claim under the Fourteenth Amendment or a claim of cruel and unusual punishment under the Eighth Amendment. *See Sandin v. Conner*, 515 U.S. 472, 484-86, 115 S.Ct. 2293, 132 L. Ed.2d 418 (1995)[8]; *Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir.1997); *Wilson v. Wellman*, 238 F.3d 426, 2000 WL 1829265, **3 (6th Cir.(Mich.) December 6, 2000) (Unpublished Disposition) (Plaintiff did not suffer the loss of good-time credits or any other action affecting the duration of his sentence; disciplinary segregation did not impose an atypical and significant hardship in relation to the ordinary incidents of prison life); *Ford v. Harvey*, 106 Fed. Appx. 397 (6th Cir. (Mich.) August 6, 2004) (Not selected for publication in the Federal Reporter) (State prisoner's placement in disciplinary confinement did not implicate a liberty interest entitled to due process protection, where it was neither accompanied by loss of good time credits nor lasted for a significant period of time causing an unusual hardship on prisoner).

Due process rights are only triggered by the deprivation of a legally cognizable liberty interest. *Mitchell v. Horn*, 318 F.3d 523, 531 (3rd Cir. 2003). Here, Barnard had no protected liberty interest, under either the Eighth or Fourteenth Amendments, in not being confined in disciplinary segregation. Since no constitutional violation occurred, consideration of the

---

[8]

In *Sandin*, a state prisoner challenged his 30-day sentence to segregation after the prison adjustment committee followed a prison regulation in determining Sandin's guilt. The question was whether the regulation created a liberty interest which would have entitled him to substantial due process procedures established in *Wolff v. McDonnell*, 418 U.S. 539, 564-71 (1974).

The Supreme Court determined that neither the Due Process Clause nor the Hawaii prison regulation at issue presented a liberty interest such as to trigger due process procedural protections set forth in *Wolff*. The Court stated that " . . . Conner's discipline in segregated confinement did not represent the type of atypical, significant deprivation in which a state might conceivably create a liberty interest . . ." *Id.* at 483-84. *Sandin* focused not on the content of the regulations, but on the "nature of the deprivation" visited upon the inmate. *Id.* at 481.

15

defendants' qualified immunity argument is not necessary.

Second, the record reveals that there was "some evidence" on which Defendant Buckler justifiably relied in finding Barnard guilty of the lesser KDOC Category Four charge, "Attempting to Develop a Relationship with a Non-Inmate." Defendant Gilliam stated as follows in her January 1, 2006, Disciplinary Report Form, Part I – Write Up and Investigation:

> After taking I/M's BP and having general conversation with the I/M, out of nowhere I/M stated myself, Donna, and Denise stimulated him and he hadn't been that way with a woman in a lot of years. Felt uncomfortable with the comment.

[*See* KDOC Disciplinary Report Form, Record No. 64-5].

Jeff Dennis, the investigating officer, made the following comment in the same report wherein he charged Barnard with "Inappropriate Sexual Behavior," a Category 6-13 offense:

> I/M Ricky Barnard 097872 states that he made the comment, that after doing as much time as he did that talking to a woman can be stimulating. Then he said he realized that it could be taken wrong, so he then stated that he didn't mean that sexually. He states that he also stated he enjoyed conversation with Mrs. Black and Mrs. Brewer also.
>
> Nurse Gilliam was contacted by I, Lt. J. Dennis, and she stated the write-up is true as written and I/M Barnard didn't state he didn't mean this sexually…

[*Id.*].

A hearing officer need not accept what the inmate perceives to be the "best" or most convincing or persuasive set of facts: according to *Superintendent, Mass. Correctional Inst., Walpole v. Hill*, 472 U.S. 445, 455-56 (1985), there need only be "some evidence" to support the disciplinary decision. This standard is satisfied where "there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.*

16

"Some evidence" is a lenient standard; the relevant question is whether any evidence in the record could support the disciplinary board's conclusion. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. at 455-56; *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir.2000). Therefore, a district court has no authority under the guise of due process to review a disciplinary committee's resolution of factual disputes. *Superintendent*, 472 U.S. at 455. A review of a decision of a prison disciplinary board does not involve a redetermination of an inmate's innocence or guilt.

A district court merely ensures that a disciplinary decision is not arbitrary and does have evidentiary support. *Id.* at 457. The only question is whether the hearing officer had "some evidence" to ensure fairness and justify his amended findings. Even meager proof will suffice. *Webb*, 224 F.3d at 652.

Barnard challenged the accuracy of Gilliam's and Dennis's allegations at his disciplinary hearing. He testified that Gilliam and Dennis were wrong, and denied that he ever confessed to making any inappropriate sexual remarks to Defendant Gilliam. Defendant Buckler, as the trier of fact, was free to give Barnard's version of the episode the proper weight and credibility.

Defendant Buckler  apparently assigned some weight to Barnard's denials, because he found Barnard guilty of a lesser KDOC Category Four offense and sanctioned Barnard with only 45 days in disciplinary segregation, with credit for time served.  He was not required to accept Barnard's version as gospel truth. Gilliam's and Dennis' statements in the Disciplinary Report form constituted "some evidence" on which to base Barnard's disciplinary conviction.

Third, Barnard claims that Defendant Gary Beckstrom, the former warden of the LSCC, failed to properly scrutinize the evidence and/or Buckler's findings and simply upheld Buckler's

17

determination of guilt. As the defendants correctly note, § 1983 liability cannot be imposed against Beckstrom under the theory of *respondeat superior*.  This theory of recovery has been rejected as a basis for a §1983 claim.  *See Monell v. Department of Social Services*, 436 U.S. 658, 691-694; 98 S.Ct. 2018 (1978). The Sixth Circuit has stated, "The law is clear that liability of supervisory personnel must be based on more than merely the right to control employees." *Hayes v. Jefferson County*, 668 F.2d 869, 872 (6th Cir. 1982).

Fourth, to the extent that the plaintiff alleges that the defendants violated the provisions of two Kentucky penal statutes, that claim also fails. It is established law that violations of state and federal statutes do not provide for private causes of action; authority to initiate criminal complaints rests exclusively with state and federal prosecutors.  *Sahagian v. Dickey*, 646 F. Supp. 1502 (W.D. Wis. 1986).  Such complaints must be initiated by a United States Attorney or a federal grand jury, *Kennedy v. Anderson*, 373 F. Supp. 1345, 1346 (E.D. Okla. 1974).

"[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973); *see also United States v. Oguaju*, 76 F. Appx 579, 581 (6th Cir. 2003) (holding that the district court properly dismissed defendant's claim filed pursuant to 18 U.S.C. §§ 241 and 242 because he had no private right of action under either of those criminal statutes); *Gomez v. Whitney*, 757 F.2d 1005, 1006 (9th Cir. 1985) (the Court of Appeals affirming the district court's grant of summary judgment and explaining that it could "find no instance where the courts have recognized inadequate investigation as sufficient to state a civil rights claim . . . ."); *Fulson v. City of Columbus*, 801 F. Supp. 1, 6 (S.D. Ohio 1992) (summary judgment for defendants granted, "It

18

is well established that a private citizen lacks a judicially cognizable interest in the prosecution or non-prosecution of another.").

Fifth and finally, the claim against Defendant Joseph Meko (the current warden of the LSCC) seeking injunctive relief, is moot.  Barnard has long since served his disciplinary sentence.  Defendant Meko can provide no injunctive relief to Barnard, and as discussed, the defendants are not liable to Barnard for any monetary damages.

Under Fed. R. Civ. P. 56, the plaintiff has raised no genuine issue of fact regarding the Fourteenth Amendment claims asserted against Defendants Gary Beckstrom, Joseph Meko and Thomas Buckler. The defendants are entitled to summary judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 251-53.  Their "Motion for Summary Judgment" [Record No. 64] will be granted and the claims against them will be dismissed with prejudice.

### 3. Motion for Summary Judgment Filed by Defendants Gilliam, Black and PHS [Record No. 80]

There are several reasons why the Eighth Amendment medical claims against Defendants Gilliam, Black and PHS must be dismissed.

### A. Failure to Properly Exhaust Psychiatric Claims

Based on review of the record, the Court agrees with the defendants' argument that Barnard failed to administratively exhaust his claim that he was denied that psychiatric care as far back as July 21, 2005.  The operative grievance is LSCC Grievance Number 05-214, which Barnard completed on November 1, 2005 [Record No. 80-8].

It is clear from reviewing that Grievance Form that the issue which Barnard was grieving on November 1, 2005 was his desire to change the dosage of his Elavil medication and time of

19

day at which he took the medication. Barnard received the relief he requested in that regard (a change in the dosage of the Elavil). If Barnard subjectively intended to seek psychiatric treatment in that grievance, he failed to adequately convey the request to LSCC officials.

In the section of that Grievance Form entitled "**Brief Statement of the Problem**," Barnard provided a response that was not brief. He wrote on 8 lines of the first page of the Grievance Form, then continued to the second page and consumed the entire second page of the Grievance Form. In relevant part of that particular section, Barnard stated as follows :

> On 10/9/05 my Phsyc. medication expired without being renewed or my seeing a Psychiatrist. It should be noted that I do not carry the meds so I had no idea when they expire nor do I control the scheduling, regarding the Psychiatrist schedule. I immediately filed a sick call request .
>
> **In the above mentioned sick call request I specifically requested that the time I take my meds be changed and the dosage be adjusted. . . .**

[Record No. 80-8, pp. 3-4] (Emphasis Added).

In the "Continuation" part of that section, Barnard conveyed the details of all of his conversations with the medical staff between October 24-27, 2005. He wrote as follows:

> . . . I was the one that did not get to see the doctor, **even though my meds, prescribed by a psychiatrist, had expired, and I had signed up to see two and a half weeks prior in order to see him. I have not, to the date of this grievance, seen a doctor.** Best I can tell there is one Psychiatrist. He is here one day a week.

[*Id*., p.4] (Emphasis Added).

Although Barnard mentioned that his medication had been prescribed by a psychiatrist, the language highlighted from the two preceding passages reveals that Barnard's objective in submitting Grievance Form 05-214 was to renew his Elavil prescription which had expired, and

20

to effectuate a change of the time of day at which it was administered.

Barnard now attempts to recharacterize the purpose of his grievance. He can not change what he wrote, which was: "**In the above mentioned sick call request I specifically requested that the time I take my meds be changed and the dosage be adjusted**. . . ." [*See* "Brief Statement of the Problem,"Record No. 80-8. p. 3].

The convoluted narrative on page two of the Grievance Form mentioned two "Sick Call Requests." Assuming that the LSCC may have referred to those "Sick Call Requests" in assessing the  November 1, 2005 Grievance Form, the Court has examined those documents to see if they would have supported Barnard's current claim that he was in need of, and was seeking, *psychiatric* care when he filed his grievance on November 1, 2005.

On October 9, 2005, Barnard submitted a "Request for Health Care"form [*See* Record No. 80-2, p. 12]. Barnard made explicit requests to Denise Black regarding changes in both the dosage and the times his medications were administered to him.  Barnard stated as follows:

> Ms. Black, at pill call tonight the nurse told me that my meds had expired.  There are still meds there, but apparently, they have expired.  **Please** [9] **fix it that I can continue them till a new order is written.  I want to change the time that I take my meds to 4:30pm but I'm not going to be able to take as much that early.  I'd like the option of 25 and 50 available in 2 25's**. If you need to see me call me at P.I. (Prison Industries).

[*Id*.] (Emphasis Added).

Simply put, Barnard did not state in his October 9, 2005 "Sick Call Request" that he needed to see a psychiatrist. Had the Denise Black, or any other member of the LSCC medical

---

[9]

The word "please" was underlined three times.

staff reviewed that particular document, they would have reasonably concluded that Barnard wanted only three things: (1) to get his Elavil prescription renewed; (2) to change the time he took the Elavil to 4:30 pm; and (3) to change the dosage (strength) of the Elavil that he wanted to start taking at 4:30 p.m.

On October 24, 2005, Plaintiff filed Request for Health Care No. 2562, again requesting that the dosage of his Elavil be reduced from 75mg to 50mg per day. [*See* Record No. 80-2, p. 16]. He again requested that his prescription be administered at 4:30pm rather than during the regularly scheduled 8:00 p.m. schedule for administering medications. He stated as follows:

> **I need my 8pm med changed**. I have amputations on my right foot. I can not be standing in the cold on what amounts to a clock of ice (cold concrete). **I need to start attending 4:30 pill call which means that I'll have to take less. I would like to try 2\* 25's mg. By making it 2 25's I am with the option of 1 25 mg or both 25 mg or both depending on the effect of the 2 \* 25.  I am unsure if I'm now taking 75 mg or 100mg.**

[*Id*] (Emphasis Added).[10]

---

[10]

Barnard's earlier medical records from LSCC also contradict his claim that he began seeking psychiatric treatment as far back as July 21, 2005. On that date, Barnard was transferred to LSCC. During an examination at intake, Barnard was examined by Nurse Donna Brewer.     Brewer took a physical history from Barnard and completed a KDOC "Transfer & Receiving Screening Form" ("TRSF").  Brewer noted on the TRSF that Barnard was taking three medications at that time, one of which was Amitriptyline [Record No. 80-2, p. 2-4].  Thus drug is the generic for Elavil, which is an antidepressant with hypnotic effects. *See* Affidavit of Renate Stingl, M.D. ("Stingl Affidavit") [Record No. 80-6, p. 2].

In the box labeled "History" Brewer checked the "yes" box next to "Mental Illness" [Record No. 80-2, p. 3]. She noted that on the TRSF that Barnard had requested "Sick Call." However, the nature of the request did not pertain to mental health issues.  Under the following heading entitled "Nature of Complaint," Brewer responded by writing "Right foot."

Barnard alleges in his § 1983 complaint that he began demanding mental health treatment on July 21, 2005, but Brewer made no notations on the TRSF that Barnard had requested or demanded mental health treatment [*Id*.].  On August 5, 2005, Denise Black made a written response on the TRSF, which stated: "Examined R foot. Phalange amputee. Recommend bottom bunk."[*Id*.].

On September 9, 2005, Barnard completed a "Request for Health Care" form [*Id*., p. 6]. On that

Just as he failed to do in his October 9, 2005 "Sick Call Request," Barnard did not state in his October 24, 2005 "Sick Call Request" that he needed to see a psychiatrist. Had the Denise Black, or any other LSCC medical staff reviewed that document in assessing Grievance Form 05-214, she would have reasonably concluded that Barnard was seeking *only* modifications to the time and manner in which his Elavil prescription was being administered.

With respect to Grievance Form 05-214, Barnard's comment that a psychiatrist had originally prescribed the medicine does not convince the Court that his goal in filing the grievance was to obtain treatment from a psychiatrist. The mere mention of the word "psychiatrist" does not convert the grievance into one seeking psychiatric treatment.

The other passing references to the word "Psychiatrist" also failed to plainly apprise the LSCC medical staff that what Barnard was seeking mental health care on November 1, 2005. The Grievance Form informs that Barnard wanted to get his Elavil prescription renewed with certain changes.   All Barnard had to write on his Grievance Form was "I need to see a psychiatrist as soon as possible." He did not do that.  Instead, Barnard  regaled the prison staff reading the Grievance Form with disjointed information about what the nurse and other staff members said, to whom they said it, what he said, and what he subjectively thought. Finally, under the section of the Grievance Form  entitled "**Action Requested**," Barnard wrote:

---

date, Barnard complained of burning sinus, mouth sores, hypersensitive gums, and soreness on the left side of his face.  A "Physicians' Order" was entered on September 13, 2005 which diagnosed Barnard as suffering from sinusitis and prescribed Actifed for allergies [*Id*., p. 8].  On September 16, 1005, Barnard asked for a copy of the MRI test taken of his face and sinus  [*Id*., p. 9]. On September 21, 2005, Barnard complained of frequent infections and requested that blood work be done every three weeks to check on his white blood count [*Id*., p. 10]. This work was performed.

"Answer the following questions,
What was the date the psychiatrist arrived at this institution?
How many days a week does the psychiatrist see patients?
Why doesn't this institution have medical appointments?
What are the days and hours that the psychiatrist sees patients at
this institution?"

[*Id.*, p.3].

Here, Barnard posed only a set of general questions concerning when the psychiatrist was to be on duty at the LSCC. That is not the same thing as saying that he had a specific need for psychiatric services. He did not say "I want to see the psychiatrist." Barnard did not request an appointment to see a physician, nor did he request any other specific action relating to his prescription or psychiatric care.

Subtlety is not a good feature in completing a prison grievance form. Prison officials have numerous responsibilities and handle hundreds of administrative documents. They are responsible for many inmates, and all aspects of security and housing. If Barnard had wanted to see a psychiatrist, he should have expressly said so in the Grievance Form he submitted.

As the defendants note, CPP 14.6. requires that "the grievant shall include all aspects of the issue in the written grievance that the grievant wants to be addressed by the grievance process so that they can be dealt with during step 1." While Grievance Form 05-214 specifically raised the issue of the need to have the Elavil prescription renewed and modified, it did not raise the aspect of Barnard's alleged need for psychiatric care, which is what he is claiming he was denied in this lawsuit.[11]

---

[11]

The grievance was reviewed at the informal resolution stage of the grievance review process by Black on November 3, 2005. In response to Barnard's questions, Black stated that the

Inmates are required to properly exhaust their claims. *See Woodford v. Ngo*, 126 S.Ct. 2378, 2387 (2006) (exhaustion requirement mandates "proper exhaustion," which demands compliance with prison procedural rules). *See also Bell v. Konteh*, 450 F.3d 651, 653 (6th Cir.2006); *Spencer v. Bouchard*, 449 F.3d 721, 726 (6th Cir.2006); *Curry v. Scott*, 249 F.3d 493, 504-05 (6th Cir.2001) (grievance must contain facts concerning the alleged mistreatment or misconduct by that defendant so as to give the defendant fair notice of the basis of the prisoner's constitutional claims).

The court concludes that Grievance No. 05-214 fails to provide fair notice that the plaintiff believed that either Defendant PHS or Defendant Black was denying him access to psychiatric care on or before November 1, 2005.

Additionally, Barnard claims that Defendant Black denied him medical treatment between November 1, 2005 (the day he filed Grievance Form 05-214) and February 16, 2006 (the day he saw Dr. Arthur Daus). The record contains no evidence that Barnard filed a grievance alleging denial of medical treatment at the hands of any defendant between November 2, 2005 and

---

"[p]sychiatrist sees patients on an as needed basis as recommended by the psychologist. Medical appointments are given and provide for through sick call procedure." Barnard alleges that he appealed the informal resolution of his grievance to the Health Care Grievance Committee on November 6, 2005. [Record No. 19, ¶ 34].

Shortly thereafter, on November 10, 2005, Barnard was called to the medical department by Black. [*Id*, ¶ 35]; Exhibit 2, Black Affidavit. At that time, Barnard told Black that he wanted the dosage of his Elavil prescription reduced and the time of day that it was administered changed to an earlier time. Id. In response to Barnard's request, Black immediately contacted Dr. Stingl and informed her of Barnard's request. *Id*.; *See also* Exhibit 3, Stingl Affidavit. On November 10, 2005 Dr. Stingl verbally ordered that Barnard's prescription be reduced to 50mg per day and changed the time in which it was administered from 8:00pm to 4:30pm, as requested. *Id*. Accordingly, Barnard received precisely what he requested.

February 16, 2006. Despite filing a forty-page response and hundreds of other pages of additional documents, Barnard did not produce evidence of administrative exhaustion for claims alleged to have arisen between November 2, 2005 and February 16, 2006. Unexhausted claims must be dismissed.

One final issue remains on the issue of proper and complete exhaustion. The record contains no indication hat Barnard ever filed any type of grievance against Defendant Gilliam regarding the fact that she had reported comments Barnard made to her, which in turn caused a disciplinary charge to be brought against Barnard.  Barnard failed to exhaust that claim.

## B. Statute of Limitations Bars Medical Claims

Going one step further, the Court will assume for argument's sake that Barnard had adequately grieved the issue of the need for psychiatric care in Grievance No. 05-214. The record reveals Defendant Black responded to that grievance on November 3, 2005 [Record No. 80-8]. The Court will accept as true Barnard's assertion that he appealed Black's response to the Health Care Grievance Committee on November 10, 2005.

The defendants correctly note that with respect to any claims against PHS arising between July 21, 2005 and November 10, **2005**, Barnard would have had to file suit on these claims or before November 10, **2006**. The statue of limitations in a claim arising under 42 U.S.C. §1983 in Kentucky is one year. *Collard v. Kentucky Bd. of Nursing*, 896 F.2d 179, 182 (6th Cir.1990).

The cause of action accrued when Barnard knew or had reason to know of the injury that is the basis of his action. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir.1996) Barnard did not file the instant action in Elliot Circuit Court until January 3, 2007, well past the one-year deadline

26

with respect to claims accruing between July 21, 2005 and November 10, 2005.

Barnard attempts to address the missed statute-of-limitations deadline by claiming that Defendant Black failed to respond to his request for psychiatric care on July 21, 2005 during the initial intake examination [*Id*., pp. 26-27]. Black stated that the "[p]sychiatrist sees patients on an as needed basis as recommended by the psychologist. Medical appointments are given and provide for through sick call procedure." [Record No. 80-8, p.3] The Court disagrees that Black did not adequately respond to his four questions.  Black succinctly explained what the LSCC's policy was regarding prisoner-psychiatric care.

C. <u>Defendant Black's Involvement</u>
<u>Limited to Grievance Activity</u>

The record is clear that Defendant Black's involvement was limited to responding to the November 1, 2005 Grievance Form, and to meeting with Barnard on November 10, 2005 as part of the grievance procedure. The defendants persuasively cite *Shehee v. Luttrell*, 199 F.3d 300 (1999) as authority for the proposition that liability under § 1983 must be based on more than *respondeat superior*, or the right to control employees.  It must be based on active constitutional behavior not a "mere failure to act." *Id*., quoting *Salehpour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir. 1998), *cert. denied*, 526 U.S. 1115 (1999).

Put another way, there is no inherent constitutional right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467, 103 S. Ct. 864 (1983); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir.1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir.1994); *Flick v. Alba*,

27

932 F.2d 728, 729 (8th Cir.1991).[12]  Any alleged due process claims against her lack merit.

D. <u>No Serious Medical Condition Existed and</u>
<u>No Deliberate Indifference Demonstrated</u>

Even assuming that exhaustion, the statute of limitations, and other considerations discussed herein were not a barrier, Barnard has failed to meet the requirements of an Eighth Amendment claim.  The Eighth Amendment contains both an objective and a subjective component.  *Wilson v. Seiter*, 501 U.S. 294, 111 S. Ct. 2321 (1991).  "The test to determine whether [a defendant] acted with 'deliberate indifference' has an objective and subjective component." *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir.2001).

The objective component requires the existence of a "sufficiently serious medical need." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir.2004). The subjective component requires a plaintiff to show that "the official [knew] of and disregard[ed] an excessive risk to inmate health or safety, which is to say the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Clark-Murphy v. Foreback*, 439 F.3d 280, 286 (6th Cir.2006) (quoting *Farmer*

---

[12]

Numerous Sixth Circuit decisions hold that there is no inherent constitutional right to an effective prison grievance procedure.  *Argue v. Hofmeyer*, 80 Fed. Appx. 427, 430 (6th Cir. (Mich.) October 30, 2003) (Not selected for publication in the Federal Reporter); *Overholt v. Unibase Data Entry, Inc*. 221 F.3d 1335, 2000 WL 799760, **3 (6th Cir. (Ohio) June 14, 2000) (Unpublished Disposition) ("In addition, Overholt did not state a viable First Amendment claim concerning the prison grievance procedure.  The defendants were not obligated to 'properly' respond to Overholt's grievances because there is no inherent constitutional right to an effective prison grievance procedure.  *See Flick v. Alba*, 932 F.2d 728, 729 (8th Cir.1991).  Hence, his allegations that the defendants did not properly respond to his grievances simply do not rise to the level of a constitutional violation."); *Mays v. Wilkinson*, 181 F.3d 102 (Table), 1999 WL 282690 (6th Cir.(Ohio) April 28, 1999) (same.)

28

*v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970 (1994)) (internal quotation marks omitted).

Deliberate indifference is the reckless disregard of a substantial risk of serious harm; mere negligence will not suffice. *Id.* at 835-36. Deliberate indifference has also been defined as "more than mere negligence, but 'something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" *Foy v. City of Berea*, 58 F.3d 227, 232 (6th Cir. 1995) (quoting *Farmer v. Brennan*).

Allegations of medical malpractice or negligent diagnosis and treatment are not cognizable under §1983. *See Estelle v. Gamble*, 429 U.S. at 106; *Birrell v. Brown*, 867 F.2d 956,958 (6th Cir. 1989). The concept of deliberate indifference has been equated with wantonness and with acts that are taken with criminal recklessness. *Brooks v. Celeste*, 39 F.3d 125 (6th Cir. 1994). An official must show a conscious disregard to a substantial risk that the inmate will experience serious harm. *Farmer v. Brennan*, 114 S. Ct. at 1979.

Here, Dr. Renate Stingl, who is board certified in internal medicine, and Dr. Arthur Daus, who is board certified in pain management, both filed sworn affidavits on behalf of Defendants Black, Gilliam, and PHS [*See* Record Nos. 80-7 and 80-7]. Dr. Daus examined Barnard on February 16, 2006. At that time, Dr. Daus noted that Barnard was complaining about a "sleeping problem" and a "sleep walking problem" [*Id.*]. Both conclude: (1) that Barnard was not suffering from a serious medical condition between October 9, 2005 and February 16, 2006; (2) that with regard to the condition that he did have (a sleeping problem), he received the proper care; (3) that   medical assistance was provided in sufficient time to address the issue; and (4) regarding any delay in receiving that care between October 9 and 24, 2005, he sustained no

29

physical injury.

Dr. Daus noted that Barnard had been taking Elavil, a tricyclic antidepressant, for nineteen years (as of 2006). Dr. Daus explained as follows in his sworn statement:

> Tricyclic antidepressants are frequently and appropriately prescribed for individuals with sleep related disorders in association with their mental health problems. **Barnard did not report any specific mental health complaints or concerns; however, he did request that his dosage be increased so that he could sleep through the night and wake up for the 9:30 head count**. Based on the history provided to me, I ordered that his prescription be increased from 50mg to 75 mg, daily. . . I also ordered Barnard not to consume caffeine. Other than minor sleep issues that Barnard reported, the Elavil appeared to successfully alleviate his symptoms.
>
> **While Barnard's alleged request to reduce the dose of Elavil on October 9, 2005 and October 24, 2005 should certainly not be ignored, it was not a medical need that required immediate attention nor does it rise to the level of a "serious medical need." Further more, to the best of my knowledge, Barnard did not suffer from any physical injury as the result of any alleged or actual delay in treatment. Likewise, I did not observe any psychiatric side effects from the alleged or actual delay in treatment.**
>
> **To the extent Barnard is or was under the impression that only a psychiatrist may renew or change his Elavil prescription, he is mistaken**. Id. Under the circumstances, it was appropriate for Dr. Stingl, as the primary care physician at LSCC, to prescribe Barnard Elavil.  **It was not necessary that I be consulted for a request of that nature. In fact, most psychotropic drugs (i.e. Elavil) are typically prescribed by a non-psychiatrist such as a primary care physician. Likewise, while the November 10, 2005 reduction in his Elavil prescription and the change in time it was administered was appropriate, it was not medically necessary, nor would it be expected that it would cause psychiatric or physical injury** . . . .

[*See* Daus Affidavit, Record No. 80-7, p.2] (Emphasis Added).

Other than his own personal opinion, Barnard has not offered any medical proof that would contradict Dr. Daus' medical opinion that Barnard was not manifesting complaints or symptoms consistent with a serious medical condition on or before February 16, 2006. Barnard

30

complained about problems with his sleep.  He did not present any other complaint which Dr.

Daus considered to be a "serious medical condition."[13]

Moreover, Dr. Daus explains that Barnard's request for a change in his dosage was

properly channeled through Dr. Stingl, the primary care physician at LSCC. Finally, Dr. Daus

finds no merit in the claim that the ten-day delay in October of 2005, in getting the change in

dosage and time of administration of the Elavil authorized, caused Barnard to suffer any adverse

physical consequences.  In order to show a constitutional violation based on an alleged delay in

medical treatment, the prisoner must place verifying medical evidence into the record

establishing the detrimental effect of the delay.   *Napier v. Madison County, Ky.*, 238 F.3d 739,

742 (6th Cir. 2001). Barnard has not presented any medical evidence regarding the delay.

Dr. Daus conclusively explains that based on his examination of Barnard on February 16,

2006, Barnard had not suffered any physical - -or psychiatric - - side effects.  Barnard wrote in

the November 1, 2005 Grievance Form that cold weather caused the area of his amputated toe

to become sensitive and that he did not want to stand in line on a concrete floor for long periods

of time.  Clearly, this comment reinforced Barnard's request to change the time his medicine was

being handed out, perhaps to a less busy time when he would not have to stand in line as long.

However, the Court finds no credence in the proposition that Barnard's sensitive toe area,

and his desire not to stand in while medications were being handed out, was a "physical injury"

---

[13]

Dr. Daus's sworn Affidavit is consistent with his handwritten notes from his examination
of Barnard on February 16, 2008 [*See* Record 80-2, p. 17]. Dr. Stingl also concludes that Barnard
did not relay complaints indicative of a serious medical condition.

which *caused* any alleged resulting emotional distress.  Neither Dr. Daus nor Dr. Stingl gave Barnard's comment about his sensitivity in his amputated toe area any weight in evaluating Barnard's medical condition. In fact, they did not mention the issue.  Even if the sensitive toe area could be broadly construed as a physical injury, it was at best *de minimis* in nature.[14]

As the Supreme Court dictated in *Celotex*, summary judgment is justified "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corporation v. Catrett*, 477 at 322.

At best, Barnard has alleged a state court medical malpractice claim, not a valid Eighth Amendment claim *See Westlake*, 537 F.2d at 860-61.[15]  In another case involving a prisoner who

---

[14]

    *See Siglar v. Hightower*, 112 F.3d 191, 193-194 (5th Cir. 1997) (Recovery for mental and emotional damages was denied when the physical injury supporting the claim was *de minimis*: injuries included soreness and bruising of a prisoner's ear that lasted for three days after a correctional officer verbally abused the plaintiff and twisted his arm and ear); *Jones v. Sheahan*, 2000 WL 1377114, 8 (N. D. Ill., Sept. 22, 2000)(seven-month delay of surgery for removal of tumors does not to rise above the de minimis physical injury requirement when the plaintiff alleged the delay resulted in "anguish and worry" that the tumors might be malignant, but no physical effects).

[15]

    There are numerous unpublished Sixth Circuit opinions which adopt *Westlake v. Lucas'* holding that where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second-guess medical judgments *See Wilson v. Wilkinson*, 62 Fed. Appx. 590, 2003 WL 1795812 (6th Cir. (Ohio) April 1, 2003) (Not selected for publication in the Federal Reporter); *Wooley v. Campbell*, 63 Fed. Appx. 789, 2003 WL 1795708 (6th Cir. (Tenn.) March 27, 2003); *Wright v. Sapp*, 59 Fed. Appx. 799, 2003 WL 1465184 (6th Cir. (Ky.) March 17, 2003); and *Simpson v. Ameji*, 2003 WL 236520 (6th Cir. (Ky.) January 30, 2003). *See Jennings v. Al-Dabagh*, 97 Fed. Appx. 548, 550, 2004 WL 957817, 2 (6th Cir. (Mich.) 2004) ("Jennings's personal opinion that his care was substandard, or that he was not given the treatment he requested because of the costs associated with the treatment, raises claims of state-law medical malpractice, not constitutionally defective medical care indifferent to Jennings's serious medical needs. *See Westlake*, 537 F.2d at 860-61.").

alleged that his psychiatric needs had not been met by prison officials, the court reached the same result. *See Kirby v. Johnson*, 243 Fed. Appx. 877, 879, 2007 WL 2228616 (5th Cir. (Tex.) 2007).

In *Kirby*, a state prisoner alleged that he had been denied adequate medical treatment because his psychiatric medications were discontinued by physician abruptly without sufficient examination of his medical records and without thorough medical examinations. The district court disagreed. On appeal, the Fifth Circuit held that the dispute constituted a disagreement with medical treatment, or at the most, negligence or medical malpractice, rather than a cognizable claim of deliberate indifference as to a serious medical need under the Eighth Amendment. *Id*.

In summary, Barnard has not satisfied either prong of the Eighth Amendment analysis. The Court is faced with a well-supported motion for summary judgment. The Affidavits of Drs. Stingl and Daus, and Barnard's own medical records, contradict that Barnard's claim that he suffered from "serious medical condition" **or** that the defendants (any of them) were "deliberately indifferent" to that medical need, even if one could assume that a serious medical condition existed. Review of the defendants' other arguments is therefore unnecessary.[16]

Thus, Barnard's Eighth Amendment claims are dismissed for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 56 and 28 U.S.C. §1915(e)(2)(ii). Summary

---

[16] Regarding Barnard's claim that Defendants Black, Gilliam and PHS are liable to him for violating two Kentucky penal statutes, KRS 522.020 or KRS 522.030, the Court reiterates its earlier conclusion that these statutes do not give rise to a cause of action in a federal civil rights action.

judgment will be granted in favor of Defendants Denise Black, Julie Gilliam and PHS.

CONCLUSION

Accordingly, **IT IS ORDERED** as follows:

(1)    The "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment " [Record No. 64], filed by Defendants Gary Beckstrom, Joseph Meko and Thomas Buckler is **GRANTED**.

(2)    The "Motion for Summary Judgment" filed by the Prison Health Services, Inc. ("PHS"); Denise Black, and Jennifer Gilliam [Record No. 80] is **GRANTED**.

(3)    The "Motion to Amend/Correct Record No. 125 Re: Exhibit 27,"[Record No. 126], filed by Plaintiff Ricky L. Barnard is **DENIED** as **MOOT**.

(4)    The "Motion to Strike Plaintiff's Submissions," [Record No. 127] filed by Defendants PHS, Denise Black, and Jennifer Gilliam is **DENIED** as **MOOT**.

(5)    This action is **DISMISSED WITH PREJUDICE** and Judgment shall be entered contemporaneously with this Order in favor of the named defendants.

This September 17, 2008.



Signed By:

_Henry R Wilhoit Jr._

**United States District Judge**